Wendy H. Chau, Esq., SBN 278801
LAW OFFICES OF WENDY H. CHAU
505 Montgomery Street, Floor 11, Ste 1064
San Francisco 94111
Ph. (415)539-6116
Fax: (888)958-1953
info@attorneychau.com

Plaintiff in Pro Per

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Wendy Ha Chau, Individually<br><br>Plaintiff,<br><br>vs.<br><br>City & County of San Francisco, X Corp., Elon Musk, an individual, Jackie Fielder, an individual, and DOES 1-10<br><br>Defendants. | Case No.: _____<br><br><br>**COMPLAINT FOR DAMAGES; DECLARATORY AND INJUNCTIVE RELIEF; AND DEMAND FOR JURY TRIAL** |

This is a matter of how the City and County of San Francisco, allows their elected officials to use private corporations, owned by government employees and/or government contractors to usurp the First Amendment in effectively silencing any opposing views to San Francisco, California's government policies.

**I.      INTRODUCTION**

**1.** On or about January 14th, 2025, elected politician Jackie Fielder posted on X.com that she wrote legislation keeping San Francisco, California a "sanctuary" city in violation of federal law.

**2.** The post received 2.9 million views. Plaintiff Wendy Ha Chau had many followers.

3. Plaintiff, Wendy Ha Chau, wrote comments and responses to Ms. Fielder's initial post.

4. The responses from Ms. Chau, received a lot of views and support from the local San Francisco, California **community** that is gravely affected by Ms. Fielder's "*Sanctuary City*" legislation.

5. At that time, Ms. Fielder or a DOE employee of Ms. Fielder blocked Ms. Chau from commenting on her post of Ms. Fielder's Sanctuary City legislation.

6. Also at that time, Ms. Chau wrote to a DOE employee of Elon Musk's X.com that Ms. Fielder may not block anyone from responding to Ms. Fielder's political speech.

7. Doe Employee of Elon Musk/X.com suspended Plaintiff's X.com account for being "inauthentic" and/or posting "inauthentically".

8. The actions taken by Ms. Fielder, Mr. Elon Musk's DOE employee and others have caused great harm to Plaintiff where several of Ms. Chau's First Amendment rights were violated:

9. The First Amendment covers several activities guaranteed for all citizens of the United States to peacefully engage with no hindrance from the government and actors acting on behalf of the government.

10. Due to the suspension, Ms. Chau has been unable to engage in

   a. **Freedom of the press;**

   b. **Right to petition the government to redress grievances; and**

   c. **Right to Assemble.**

11. The plaintiff is asking the court to decide on the issue of the government, in all its forms, using social media companies to usurp the First Amendment to suppress information of wrongdoings, opposing views, etc.

## II.   PARTIES

12. Plaintiff **Wendy Ha Chau** is over the age of 18, an attorney, resides in the City and County

of San Francisco, California (District 3 of San Francisco) and was injured by all Defendants.

13. Defendant **Jackie Fielder**, an elected official, an individual, who works for the city and county of San Francisco, California. At all times she is alleged to have been acting, at all times relevant to this case, in both her individual and official capacities and under the color of state law within the meaning of *42 USC § 1983.1.*

14. Defendant **Elon Musk** is an individual who at the time of the incident was a contract employee and/or consultant of the federal government. Mr. Musk was associated with the Department of Government Efficiency (DOGE). In that capacity, he led a team reducing government waste, fraud and abuse. Mr. Musk is also the chairman and Chief Technology Officer (CTO) of X (a social media platform). At all times, Mr. Musk is alleged to have been acting in his official and individual capacities and under the color of state law within the meaning of *42 USC § 1983.1.*

15. Defendant **DOE EMPLOYEE of X.com** is an unknown individual that is on information and belief over the age of 18 years of age. At all times this individual was acting on the authority and guidelines provided by Mr. Musk or his employees.

16. Defendant X Corp. owns **X.com** (**X**) is a social media platform that is privately owned by Mr. Musk and possibly investors unknown at this time. X has been dubbed the "New Town Square" by Mr. Musk and all prominent people in the political space. X is a social media platform that allows government employees and/or elected government officials to usurp the First Amendment to suppress the free speech and right to "virtually" assembled by individuals with opposing views of the government's "interests."

17. Defendant **City and County of San Francisco** is a government entity that is a municipality in the State of California. San Francisco is alleged to have been acting in its official capacity and under the color of state law within the meaning of *42 USC §1983.*

Complaint For Damages, Declaratory and Injunctive Relief and Demand For Jury Trial
3

### III. JURISDICTION, DIVISIONAL ASSIGNMENT AND VENUE

18. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for violation of civil rights under the First Amendment to the United States Constitution. Plaintiff also brings state claims for violation of Article I, Section 2(a) of the California Constitution ("Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.").

19. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), § 1343(a)(3) (civil rights violation), § 2201 (declaratory relief) and § 1367 (supplemental jurisdiction over state law claims) because it involves claims arising under federal law and civil rights.

20. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) (Venue Generally) and N.D. Cal. Civ. L.R. 3-2(c), 3-5. Based upon information and belief, the unlawful practices complained of and that give rise to the claims presented herein occurred within this district and division.

21. The Court may grant declaratory relief and other necessary or proper relief pursuant to 28 U.S.C. §§ 2201 and 2202, and may grant equitable relief, monetary damages, and a civil penalty pursuant to 42 U.S.C. § 12188(b)(2).

22. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

23. Divisional Assignment. Assignment to the San Francisco or Oakland Division is proper under Civil L.R. 3-2(c) because a substantial part of the events or omissions that give rise to the claims occurred therein.

24. **<u>Compliance With Government Claims Act:</u>**

   A. **A timely Government Claim was filed** (Gov. Code § 910).

**B. The claim was rejected**, either expressly (in writing) or by operation of law (45 days).

C. Therefore, plaintiff Chau has **the right to sue** (Gov. Code § 945.4).

### IV.   FACTS

**25.** Ms. Chau was one of six candidates that ran for the District 3 Supervisor race of San Francisco.

**26.** Ms. Chau entered the political race about five months before the election. All of her opponents had been campaigning for two years or longer.

**27**. Due to the lack of time to mount a full campaign of getting endorsements, raising money, Ms. Chau opted to join X as a paid member for her campaign. She joined in September 2024.

**28.** Ms. Chau, is a registered Republican and the sole conservative candidate in the District 5 race. She bought the membership and only had two full months to campaign on X.

**29.** Despite being a conservative Republican, next to no money raised for advertising and lack of time to get the "word out" of her campaign, Ms. Chau managed to get over 5% of the popular vote and did not finish last.

**30.** It is the opinion of Ms. Chau, that 90% - 99% of her votes came from the direct result of being on X.

**31.** The amount of votes Ms. Chau received as a result of paying to be on X is equivalent to the others who spent $300,000 and higher on their campaign.

**32.** All 5 of the other candidates were either very inactive on X or not on X at all.

**33.** The winner of the District 5 race, raised and spent the most money on traditional media and Youtube advertising, runner-up had the second biggest "war chest", 2nd runner up, third biggest war chest and so forth.

**34.** Ms. Chau spent $2,000 on a type of X membership for political figures or media personalities.

Ms. Chau is unclear on the nature of the membership BUT Ms. Chau was extremely satisfied with the results.

**After the election Ms. Chau had the momentum to move San Francisco more to the center via X**.

**35.** Wendy Ha Chau, would post her legal analysis or opinions to the videos posted on X from citizen journalists documenting the crimes stemming from the policies of the city and county of San Francisco.

**36.** Some of the videos Ms. Chau had posted, with permission, originated from JJ Smith @war24182236.

**37**. Some of those videos exposed possible money laundering from NGOs breaking the law, passing out crackpipes, to people potentially suffering from Substance Use Disorder or other types of mental illness while giving ZERO medical help or referrals to drug treatment centers.

**38.** Another video posted by Ms. Chau with permission was by @bettersoma on X.

**39.** That video was of at least twelve police officers attempting to take one mentally ill person into custody.

**40.** Ms. Chau provided analysis of the original posting of @bettersoma on how the police need more funding for training, while the city and county of San Francisco needed to invest in "Intermediate Care Facilities" (ICF is a type of locked medical facility that primarily focuses on the mentally ill, developmentally disabled or sexually violent predators).

**41**. The vast majority of Ms. Chau's postings were political in nature and always offered viable solutions to fix the problems plaguing San Francisco.

**42.** Ms. Chau went from having no followers to almost 500 followers by posting content that is political in nature.

**43.** Having 500 followers is a threshold number to unlock a feature of the X membership that Ms.

Chau had paid. Ms. Chau continued to be interested in running for office but lost followers.

**44.** Plaintiff Chau was regularly collaborating with others on X and obtained clients to directly help them navigate the social issues plaguing their businesses due to the rampant drug use and other related crimes due to the results of San Francisco's "Sanctuary City" status.

**In her official capacity as an elected official, at 6:21pm January 14th 2025, Jackie Fielder goes public on X with claims she wrote legislation to ensure Sanctuary City status in San Francisco.**

**45.** Defendant Fielder's X post is as follows:

"SAN FRANCISCO WILL REMAIN A SANCTUARY CITY

This is my first piece of legislation I introduced today as Supervisor and I am thankful to ALL TEN of my colleagues on the San Francisco Board of Supervisors for cosponsoring my resolution affirming this."

**46.** Within minutes of Ms. Fielder's post, Ms Chau responded with a comment of her own posting videos of the crime and corruption stemming from Fielder's actions and inactions.

**47.** The videos and comments from Ms. Chau, helped Ms. Fielder's post go "viral" and it has 2.9 million views.

**48.** Defendant Fielder within minutes noticed that her posts along with Ms. Chau's comments were going viral and Ms. Fielder willfully decided to block all people from commenting on her official action as an elected official.

**49.** People of the local press, who have a history of reporting on the ills stemming from the policies ruining San Francisco reached out, via comments on X, to Plaintiff/Ms. Chau saying that it was unfair to be blocked from commenting on Ms. Fielder's "declaration" post of keeping San Francisco a "Sanctuary" city.

**50.** Some of those members of the press were Susan Dyer Renolds (editor in chief) from the

Marina Times, Erica Sandberg of SF Beat and Voice of San Francisco and a few independent citizen journalists of X.

**51.** Defendant Supervisor Fielder knowingly and willfully blocked all people from commenting on her post to deliberately chill Ms. Chau's right to participate in a free press, redress her grievances AND to virtually peacefully assemble while discussing and protesting to others regarding the issue of Ms. Fielder's actions.

**X is a unique virtual "town square" that no other social media platform has successfully developed to the point that they too can provide a global/national community, while servicing the local/niche communities simultaneously .**

**52**. On or about January 15th Plaintiff Chau wrote to "customer support" about the blatant 1st Amendment violations that X is allowing elected politicians (Jackie Fielder) to engage in by blocking citizens from commenting on their posts.

**53**. Initially, an automated response replied to Ms. Chau.

**54.** Plaintiff Chau then replied to the X chat bot with the ***Knight First Amendment Institute v. Trump, 928 F.3d 226 (2nd Cir. 2019)*** case law.

At some point in late January or early February, Doe Defendant responded to Plaintiff Ms. Chau and made the claim that Ms. Chau's posts and account was "inauthentic" and suspended Ms. Chau's account.

**55**. Plaintiff Chau lost her ability to communicate with the network of journalists and political influencers of San Francisco.

**56.** Plaintiff Chau is a solo legal practitioner and depended on the virtual "town hall" X created to fully participate in local politics.

**57.** X literally allowed Ms. Chau, a single mother of two, solo legal practitioner, and budding political activist of San Francisco to be at two places at once.

58. Plaintiff Chau entered into a contract with X to allow her unfettered access to X's services for political figures

59. **Defendant DOE X employee,** knowingly and willfully broke the contract between Ms. Chau and X.

60. **Defendant DOE X employee,** willfully and knowingly ignored the caselaw of *Knight First Amendment Institute v. Trump, 928 F.3d 226 (2nd Cir. 2019)* and allowed Ms. Fielder to use X to usurp the First Amendment and deny people their right to:

   1. Peacefully assemble
   2. Right to a free press
   3. Right to petition the government for a redress of grievances.

61. In Ms. Chau's opinion, Ms. Fielder continues to use X pretending to engage in traditional government speech as a ruse to use compelled speech.

" https://x.com/JackieFielder_/status/1879353214170181791 Who can reply?

Accounts @JackieFielder_ follows or mentioned can reply"

 ***The U.S. Supreme Court, in its March 2024 decision in *Lindke v. Freed*, established a two-part test to determine when a public official's social media activity constitutes "state action" and is thus subject to the First Amendment.***

62. First step of the test is "The official possessed actual authority to speak on the State's behalf on a particular matter"

63. Defendant Fielder is an elected member of the San Francisco Board of Supervisors with actual authority to speak on the state's behalf on SF remaining a Sanctuary City. (A bill Fielder introduced)

64. The second step of the test is "The official purported to exercise that authority when speaking in the relevant social media post(s)".

65. Defendant District Supervisor Fielder exercised her authority and stated that all of her elected colleagues voted unanimously in support of her bill to keep SF a Sanctuary City etc.

**The city and county of San Francisco, employees of the city and county of San Francisco, X, employees at X and Elon Musk allowed Ms. Chau's 1st Amendment Rights to be violated despite knowing or should have known about the Lindke test.**

66. The *Lindke* test was established in March 2024.

67. Defendant Elon Musk is heavily involved in Trump's administration Department Of Government Efficiency (DOGE).

68. Defendant Elon Musk is currently the chairman at X and the Chief Technology Officer of X.

69. Elon Musk, as an advisor or other capacity of DOGE and CTO of X, known or should have known the Fielder (and other government officials) will use X in their official capacity and speak on behalf of the state.

70. The city and county of San Francisco hires city attorneys who are or should be aware of all First Amendment issues.

71. *Lindke* (2024) was a massive precedent setting Supreme Court decision dealing specifically with social media posts that every city attorney should have known.

72. Ms. Fielder may have been informed of and understood the "Lindke test" when she decided to block dissenting opinions (with facts and evidence to support the dissenting opinions) from Ms. Chau.

**Ms. Chau is considered "low income" in San Francisco, a conservative Republican candidate, and used X to offset financial advantages the Democratic candidates have.**

73. 2 Million dollars were spent in the District 3 Board of Supervisor race.

74. Based on the money spent by other candidates and length of time Ms. Chau was in the race, X provided an equivalent of $400K in advertisement.

75. Ms. Chau's ability to build networks with other political people in the SF Bay Area is unmeasurable.

**Defendant Supervisor Fielder's continuance of Sanctuary City policies fund a billion dollar industry which has led to over 600 annual fentanyl deaths, someone making millions selling crack pipes to the city and county of San Francisco and ultimately creating a drug tourism industry which requires the making of the world's most expensive "affordable housing".**

76. Defendant Fielder knows or should know her policies lead to deliberate deaths stemming from the action of the criminal illegal aliens they want to protect.

77. Defendant Fielder knows or should know that the criminal illegal aliens manufacture the fentanyl killing people in San Francisco.

78. Defendant Fielder knows or should know that employers engage in "wage theft" from victims of human trafficking or people who suffer from Substance Use Disorder (SUD)...many stemming from the actions of criminal illegal aliens.

79. Defendant Fielder purposely blocked Ms. Chau with malice and to oppress not just Ms. Chau but all persons who suffer at the hands of the actions of criminal illegal immigrants.

**Defendant Fielder allows persons who suffer from SUD to walk everywhere in San Francisco, giving them no viable options for treatment while the criminal illegal immigrants sell drugs to these people.**

80. By blocking Ms. Chau, Ms. Fielder has effectively stopped the public from knowing that there are quick and easy solutions to help people with S.U.D.

81. One example is to allow Seton Hospital access to the city and county owned building called the Fillmore Heritage Center.

82. Seton Hospital works with community leaders (such as Dr. Reverend Amos Brown) to give

medical information and referrals to Seton Hospital (a hospital with the means and bedspace to provide much needed free medical care to the people affected by the crisis created by criminal illegal aliens.

**83.** Another example would be to convert all TAY Navigation Centers into Intermediate Care Facilities (ICF).

**84.** ICFs are a perfect type of setting to give the proper medical treatment for persons who suffer from SUD, mental illness, developmental disabilities.

**85.** By chilling Ms. Chau's First Amendment rights, Ms. Fielder can easily move forward with plans of protecting criminal illegal aliens which enables building the world's most expensive "affordable housing".

**86.** Paragraph 78-83 are similar to the types of posts Ms. Chau would post on X.

**87.** Doe X Employee, determined Ms. Chau's posts as "inauthentic" and banned Ms. Chau stopped reaching out to any members via X and stopped her ability to post on her own X account.

**88.** The city and county of San Francisco and Ms. Fielder, knew that X employees would ban/chill First Amendment rights of Ms Chau for questioning Ms. Fielder's ability to block comments on posts posted on behalf of the state.

**89.** Mr. Elon Musk knew or should have known that X bans people for engaging in protected First Amendment speech rights when it opposes the state's point of view/interests.

## FIRST CAUSE OF ACTION
### Violation of *42 U.S.C. § 1983*– First Amendment Claim, Free Speech Violations against all defendants

90. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

91. Ms. Chau's ability to comment on elected government actor Ms. Fielder is protected under the Constitution.

92. The city and county of San Francisco has deliberately failed to create their own social media platform that allows elected officials to reach their constituents.

93. The city and county of San Francisco allows their elected officials to use X in their official capacity to speak on behalf of the state.

94. Defendant Fielder blocked Ms. Chau from further commenting on Defendant Fielder's post regarding "Sanctuary City" status.

95. The city and county of San Francisco has no policy to stop their elected officials from violating citizens' protected speech guaranteed under the First Amendment.

96. Defendant Elon Musk, a private citizen, is an appointed government official working for DOGE tasked with exposing and stopping waste fraud and abuse in the government.

97. Defendant Musk has zero policies or technical ways using technology stopping elected politicians from chilling the protected free speech of citizens.

98. All defendants worked together to chill Ms. Chau's protected speech by using X.

99. Defendant Musk, serving as Chief Technology Officer and having a prominent role in DOGE, is **vicariously liable** for all government actors involved who have used X to speak on behalf of the state while having no means to protect the free speech of the citizenry.

100. The court must address the unique nature of private citizens (like Elon Musk a pseudo government official) allowing the state to usurp the Constitution by using their private social media companies that have become the "new public town hall".

101. As a direct and proximate result of the conduct of all Defendants, Ms. Chau suffered the deprivation of rights secured by the First Amendment to the United States Constitution, including the right to free speech and to engage in political discourse in a designated public forum.

102. As a result of being blocked from commenting on the official government communications of elected official Ms. Fielder, Plaintiff suffered **irreparable harm**, including the loss of the

ability to participate in public debate, the inability to view, reply to, or interact with government speech made available to other members of the public, and the frustration and emotional distress associated with being excluded from a public forum created and maintained by state actors.

103. Plaintiff further suffered **constitutional injury per se**, which is compensable without proof of additional actual damages, because the violation of First Amendment rights constitutes an injury in and of itself.

104. Plaintiff also sustained **actual damages**, including but not limited to: (a) loss of opportunity to advocate for issues of public concern; (b) the chilling of her speech; (c) reputational harm related to being silenced on matters of significant public interest; and (d) ongoing emotional distress and humiliation from being intentionally excluded from political discourse by government actors.

105. Because Defendants' conduct was intentional, willful, malicious, reckless, and in conscious disregard of Plaintiff's constitutional rights, Plaintiff seeks **punitive damages** against all individually-named Defendants to the extent permitted under 42 U.S.C. § 1983.

106. At this time, Plaintiff is unable to get into her account. Plaintiff also seeks **injunctive and declaratory relief**, including but not limited to an order requiring Defendants to unblock Plaintiff, prohibiting Defendants from continuing to exclude Plaintiff or other citizens from participating in government speech on X, and requiring implementation of constitutionally compliant policies governing elected officials' use of private social media accounts as public forums.

107. Plaintiff additionally seeks nominal damages for the violation of her constitutional rights, which are available even in the absence of provable economic injury.

106. Plaintiff is entitled to recover her reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**SECOND CAUSE OF ACTION**
*Violation of 42 U.S.C. § 1983* – **First Amendment Claim**
**Retaliation of Free Speech and Freedom of the Press**
Against Defendants
**Jackie Fielder and Doe X Employee**

107. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

108. Defendant Jackie Fielder initially never blocked anyone from her post regarding "Sanctuary City" status.

109. It was not until Plaintiff/Ms. Chau engaged in her protected free speech that Defendant Fielder decided to retaliate against Ms. Chau and block her from commenting on any of Ms. Fielder's posts.

110. Doe X Employee has the authority and power to ban private citizens who engage with opposing views of the state.

111. Doe X employee, decided to permanently ban Ms. Chau from any participation on X in retaliation for noting the unconstitutional actions taken by Defendant Fielder.

112. The actions taken by both Ms. Fielder and Doe X Employee were done deliberately with malice OR the intent to oppress Ms. Chau.

113. The behavior engaged by both Defendant Fielder and Doe X Employee was despicable because it prevented countless numbers of people from receiving possible life saving information guaranteed by the Freedom of the Press aspect of the First Amendment.

114. Ms. Chau posted citizen journalism evidence that directly contradicts Ms. Fielder's comments and local mainstream media (Particularly ABC 7) regarding criminal illegal immigrant activity in San Francisco and other public safety issues stemming from criminal illegal immigrants.

115. Blocking important citizen journalism to the general public poses a grave threat to public

safety.

116. Blocking Plaintiff Chau caused great harm to Ms. Chau's reputation and ability to be an effective community leader that can help shape the massive public safety crisis that remains in San Francisco (by effectively removing her from any discourse which she is able to participate in that X allows uniquely for busy individuals that cannot fit the normal business hours of typical state hours).

117. As a direct and proximate result of the retaliatory conduct of Defendants Jackie Fielder and Doe X Employee, Plaintiff suffered the deprivation of rights secured by the First Amendment, including the right to engage in protected political speech, the right to criticize government officials, and the right to disseminate and receive information as a member of the press and as a citizen journalist.

118. Defendants' actions—blocking Plaintiff, suppressing her posts, and permanently banning her from participating in discourse on X—resulted in **constitutionally recognized injury per se**, because any violation of the First Amendment constitutes a legally cognizable harm even without proof of separate economic damages.

119. Plaintiff Chau suffered **actual and consequential damages**, including but not limited to:

a. loss of the ability to engage in political discussion on public-forum posts created by state actors;

b. loss of access to the public's receipt of Plaintiff Chau's citizen-journalism reporting;

c. suppression of truthful information regarding public safety that Plaintiff sought to provide to her community;

d. reputational harm caused by the implication that Plaintiff's speech was improper or violative;

e. emotional distress, humiliation, and frustration caused by being silenced and retaliated against for protected speech; and

f. harm to her ability to effectively communicate with constituents, community members, and the general public on matters of significant public concern.

120. Defendants' conduct foreseeably and directly impaired Plaintiff's ability to function as a community leader, advocate, and source of public-safety information, thereby causing ongoing harm to her credibility, influence, and community engagement.

121. Because Defendants acted intentionally, willfully, maliciously, and in reckless disregard of Plaintiff's constitutional rights, Plaintiff seeks **punitive damages** against the individually-named Defendants to the extent permitted under 42 U.S.C. § 1983.

122. Plaintiff Chau further seeks **injunctive and declaratory relief**, including but not limited to an order:

 a. requiring Defendants to unblock Plaintiff and restore her access to public-forum communications;

 b. prohibiting Defendants from retaliating against Plaintiff or any citizen for engaging in protected speech; and

 c. mandating constitutionally compliant procedures for elected officials and X personnel when interacting with citizen speech on matters of public concern.

123. Plaintiff Chau also seeks nominal damages, which are available when a constitutional violation has occurred even absent significant monetary harm.

124. Plaintiff is entitled to recover her reasonable attorney's fees and costs under 42 U.S.C. § 1988.

**THIRD CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1983 – Monell Liability**
(Against Defendant **City and County of San Francisco**)

125. Plaintiff Chau incorporates all preceding paragraphs as if fully set forth herein.

126. Defendant City and County of San Francisco ("City") is liable under *Monell v. Department*

*of Social Services*, 436 U.S. 658 (1978), because Plaintiff's constitutional injuries were caused by the City's official policies, customs, or longstanding practices, as well as its deliberate indifference in failing to adopt required policies to protect citizens' First Amendment rights.

**A. The City Maintained an Unconstitutional Custom or Policy Allowing Elected Officials to Censor Speech on Public-Forum Social Media Accounts**

127. The City knowingly permits its elected officials—including Defendant Jackie Fielder—to use X as an **official government communication platform** to speak to constituents, issue policy statements, and engage in government business.

128. Despite using X as an official communication channel, the City **has no constitutionally compliant policy** restricting elected officials from blocking or silencing members of the public based on viewpoint.

129. `The City's failure to adopt such policies constitutes deliberate indifference because numerous courts have held that elected officials' social media accounts used for official purposes are **public forums** where viewpoint discrimination is prohibited.

130. The City's policies, customs, and practices allowed Defendant Fielder to retaliate against Plaintiff's protected speech and block her from participating in government discourse, causing Plaintiff's First Amendment injuries.

**B. The City Delegated Governmental Authority to Private Actors and Failed to Implement Safeguards**

131. The City knowingly relies on X as the primary means for elected officials to deliver government messaging, despite X being controlled by private personnel, including Doe X Employee.

132. The City has **no policy safeguarding citizens' constitutional rights** from censorship or

retaliation by X employees acting in cooperation with, or at the request of, government officials.

133. This delegation of authority without constitutional safeguards constitutes deliberate indifference and resulted in Plaintiff being permanently banned from X by Doe X Employee after she criticized government actors.

**C. Failure to Train, Failure to Supervise, and Failure to Discipline**

134. The City has failed to properly train elected officials on First Amendment obligations related to their use of social media for government speech.

135. The City has further failed to train or supervise personnel to prevent unconstitutional retaliation, viewpoint discrimination, or suppression of citizen journalism on official-communication platforms.

136. The City has a longstanding custom of **ignoring violations** where elected officials block constituents on social media, creating a widespread practice so permanent and well-settled that it constitutes the City's de facto policy.

137. The City's failure to discipline or correct such misconduct demonstrates deliberate indifference and directly caused Plaintiff's injuries.

138. As a direct and proximate result of these City policies, customs, practices, and failures, Plaintiff's First Amendment rights were violated, causing damages as previously described. Mr. Chau again was harmed.  (note, Plaintiff Chau filed a government claim but the claim was rejected and received a right to sue letter).

## VI.   PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests the following relief on all causes of action:

139. Injunctive relief so that Plaintiff can get back into her X account.

140. Judgment for compensatory and noneconomic damages in an amount to be determined at

trial, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against all Defendants;

141. Judgment for punitive damages in an amount to be determined at trial, against all Defendants;

142. Prejudgment and postjudgment interest;

143. A jury trial on all appropriate issues;

144. An award of costs and expenses against the Defendants;

145. An order declaring that the Defendants violated the Plaintiff's rights protected under the First Amendment of the United States Constitution and the California state Constitution; and

146. Any and all other relief this Court may deem appropriate.

147. As a result, Ms. Chau's rights were violated and she was harmed.

***DEMAND FOR JURY TRIAL:**

The plaintiff requests trial by jury of all issues in this case.

Dated: December 10, 2025            By: _____
                                         WENDY H. CHAU, Esq.
                                         Plaintiff (currently as pro se/pro per)